IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOUCHCOM, INC. AND TOUCHCOM TECHNOLOGIES, INC., <br><br> PLAINTIFFS, <br><br> VS. <br><br> BERESKIN & PARR AND H. SAMUEL FROST, <br><br> DEFENDANTS. | § § § § § § § § § § § § § CIVIL ACTION NO. 1:06-CV-1622 |

## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION
## AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

In accordance with Federal Rule of Civil Procedure 12(b)(2), Defendants H. Samuel Frost and Bereskin & Parr (hereinafter "B&P" or, with Frost, "Defendants") hereby move the Court to dismiss this action for lack of personal jurisdiction. Neither Defendant has sufficient contacts with the District of Columbia, and none of the acts giving rise to the claims asserted in this case occurred in the District of Columbia. As such, there is no basis for either general or specific jurisdiction, and Plaintiffs' complaint must be dismissed.

### I.
### BACKGROUND

B&P is an intellectual property firm with four offices, all of which are located in Canada.[1] B&P has never had an office in the United States.[2] In 1987, Touchcom[3] hired

---

[1]   Affidavit of H. Roger Hart (September 21, 2006)("Hart Aff.") ¶ 3, attached as Ex. A.

[2]   *Id.* ¶ 3.

B&P and Frost, a B&P partner and registered patent agent, to prepare and file a patent application in Canada for technology allegedly owned by Touchcom.[4] The invention at issue relates to a software system for operating a pump for dispensing gasoline at typical gasoline stations where cars are refueled.[5] Touchcom identified Peter Hollidge as the sole inventor of the technology.[6]

B&P and Frost prepared and filed the Canadian application for Touchcom on August 6, 1987, and Canadian Patent No. 1,301,929 was issued on May 26, 1992.[7] All of the work performed by Frost and B&P in connection with this application was performed in Canada.[8]

Touchcom had also instructed B&P to file whatever patent applications were necessary to maintain its ability to obtain one or more patents outside of Canada that covered the gasoline-dispensing technology.[9] Because Mr. Hollidge was represented by Touchcom to be a British subject, it became possible to file a Patent Cooperation Treaty ("PCT") application in Britain.[10] The PCT provides a unified procedure for filing a single

---

[3] Touchcom, Inc. and Touchcom Technologies, Inc. are corporations with their principal places of business in Ontario, Canada. See Complaint and Jury Demand, ¶ 1.

[4] Affidavit of H. Samuel Frost (September 21, 2006)("Frost Aff.") ¶ 2, 4, attached as Ex. B.

[5] *Id.* ¶ 5.

[6] *Id.* ¶ 6.

[7] *Id.* ¶ 7.

[8] *Id.* ¶ 6.

[9] *Id.* ¶ 8.

[10] *Id.*

patent application to protect an invention in numerous countries.[11] An applicant makes a single filing in the appropriate country (referred to as the "Receiving Office"), and after a preliminary examination, the local examination and grant procedures are handled by the subsequent relevant national authorities.[12] Once the PCT application is filed, the subsequent filings in other countries are referred to as "national phase entries."[13] Accordingly, B&P prepared the PCT application and delivered it to a patent agent in the United Kingdom with instructions to file a PCT application in the British Patent Office.[14] All of the work performed by B&P in connection with the PCT application occurred in Canada.[15]

The British application was filed in the British Patent Office on August 5, 1988.[16] The application filed with the British Patent Office was intended to be identical to the Canadian application.[17] However, a small portion of the computer source code that had been attached to the Canadian patent application as filed was not filed with the application made in the British Patent Office.[18]

A national phase entry application for Touchcom's technology was filed with the U.S. Patent and Trademark Office ("U.S. PTO") in Virginia on December 28, 1989.[19] In

---

[11]  *Id.* ¶ 9.

[12]  *Id.*

[13]  *Id.*

[14]  *Id.*

[15]  *Id.*

[16]  *Id.*

[17]  *Id.*

[18]  *Id.* ¶ 12.

[19]  Frost Aff. ¶ 13.

accordance with PCT requirements, the actual text of the patent application was transmitted to the U.S. PTO in Virginia by the International Bureau of WIPO (World Intellectual Property Organization), the organization which administers the PCT system.[20] Because the PCT filing date is deemed to be equivalent to a national filing date in the designated states, the U.S. application was required to be identical to the PCT application filed in the British Patent Office, and therefore did not contain the small portion of source code that had been present in the Canadian application.[21]

Touchcom alleges that Defendants are amenable to personal jurisdiction in this litigation based on their correspondence with the U.S. PTO, which they assert was in the District of Columbia.[22] Between 1988 and 1991, the relevant period according to Plaintiffs, however, the U.S. PTO was located in Virginia.[23] Moreover, the only papers filed with the U.S. PTO by Defendants were the formal papers necessary to perfect the national phase entry application in the United States.[24] Although some of these documents were directed to the "Commissioner of Patents and Trademarks" and list a Washington, D.C. address,[25] this was a nominal address, and these documents were not

---

[20] Id.

[21] Id.

[22] Complaint at ¶ 6 and ¶ 7.

[23] U.S. Patent and Trademark Office, 1086 Official Gazette 1 (January 5, 1988); U.S. Patent and Trademark Office, 1098 Official Gazette 1 (January 3, 1989); U. S. Patent and Trademark Office, 1110 Official Gazette 1 (January 2, 1990); U. S. Patent and Trademark Office, 1122 Official Gazette 1 (January 1, 1991). The U.S. PTO has been located in Virginia since 1968 and remains there today.

[24] These papers included 1) a transmittal letter in accordance with the PCT forms; 2) a cover letter transmitting the papers and outlining applicable fees; 3) a declaration executed by Peter Hollidge; 4) a Preliminary Amendment; 5) a Petition to Make Special; 6) a Small Entity Declaration executed by Peter Hollidge; and 7) a Small Entity Declaration Executed by Touchcom. Id. ¶ 14.

[25] Id.

delivered to Washington, D.C.[26] Rather, to ensure receipt of these documents by the U.S. PTO, and because of time–sensitivity issues, B&P used a filing service to hand deliver these documents to the appropriate office within the U.S. PTO, which was then physically located in Arlington, Virginia.[27] The delivery firm used by B&P was located in Arlington, Virginia, in close proximity to the U.S. PTO.[28] Defendants never sent any correspondence or documents to the District of Columbia.

The U.S. application resulted in the registration of United States Patent No. 5,027,282 ("the '282 patent") on June 25, 1991 on behalf of Touchcom.[29] The work performed by B&P in connection with the U.S. application, as with the Canadian and PCT applications, was performed in Canada.[30]

In 2004, Touchcom sued Dresser, Inc. ("Dresser") for infringement of the '282 patent in federal court in the Eastern District of Texas. Dresser moved for summary judgment, arguing that the '282 patent was invalid. Dresser contended that the patent used means-plus-function language. Means-plus-function claims describe the "means" for performing a function, rather than describing the structure that performs the function. Under the Patent Statute, when a patent claim uses such language, the patent specification — as opposed to the claims — must set forth an adequate disclosure showing what is meant by the means-plus-function language in the claim.[31] If the

---

[26]   *Id.*

[27]   *Id.*

[28]   *Id.*

[29]   Complaint at ¶ 4, 7.

[30]   *Id.* ¶ 13.

[31]   *See In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (*en banc*) (construing 35 U.S.C. § 112 ¶ 6).

specification does not provide such a disclosure, the patent is invalid for indefiniteness.[32]  The Eastern District of Texas court found that the '282 patent contained means-plus-function language.[33]  The court next analyzed whether the patent disclosed a sufficient corresponding structure, and concluded that it did not, based in part on the absence of the source code.[34]

Plaintiffs then sued Defendants in the Superior Court of the District of Columbia.  Touchcom asserts claims for negligence and breach of contract based on the omission by Defendants of the computer source code from the U.S. patent application.  Plaintiffs contend that the missing source code was critical to the patent's validity, and that the Eastern District of Texas court would not have invalidated the '282 patent if the source code had been included.  They seek compensatory damages in excess of $50 million and attorneys' fees.

Defendants timely removed the case to this Court because the resolution of this dispute will require the interpretation of significant issues of patent law.  Defendants now seek the dismissal of this action based on the lack of personal jurisdiction over them.  All of Defendants' actions in drafting the relevant application took place in Canada, as did all contact and communications between Plaintiffs and Defendants.  Defendants have no connection to the District of Columbia, and jurisdiction is not proper here.

---

[32]  *See id.*

[33]  *Touchcom, Inc., et al. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 734 (E.D. Tex. 2005).

[34]  *Id.* at 736-37.

## II.
### ARGUMENT AND AUTHORITIES

**A.   Standard for exercise of personal jurisdiction over non-resident.**

Within this jurisdiction, it is well-settled that, to establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry.[35] First, the Court must examine whether general or specific jurisdiction exists under D.C. statutes.[36] Second, the Court must determine whether a finding of jurisdiction satisfies the constitutional requirements of due process.[37] A federal court may exercise personal jurisdiction over a non-resident defendant only when service of process is authorized by statute and only when consistent with due process of law.[38]

Personal jurisdiction may be either general or specific.[39] For general personal jurisdiction to exist, the federal court must first determine if D.C. Code Section 13-422 authorizes the exercise of jurisdiction.[40] Under Section 13-422, the Court may exercise general jurisdiction over a person "domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia."[41]

---

[35]   *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).

[36]   *Id.*

[37]   *Id.*

[38]   *Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 519 (D.D.C. 1995) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154 (1945)).

[39]   *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984).

[40]   D.C. Code Ann. § 13-422 (2001).

[41]   D.C. Code Ann. § 13-422 (2001).

In analyzing specific personal jurisdiction, the federal court must first determine if D.C. Code Section 13-423 authorizes jurisdiction.[42] The statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>
> (5) having an interest in, using, or possessing real property in the District of Columbia;
>
> (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or
>
> (7) marital or parent or child relationship in the District of Columbia . . . .[43]

When jurisdiction is based solely on Section 13-423, "only a claim for relief arising from acts enumerated in this section may be asserted against" the defendant.[44]

The D.C. long-arm statute "permits the exercise of personal jurisdiction to the fullest extent permissible under the due process clause."[45] The due process clause requires that the defendant "have certain minimum contacts with [the forum] such that

---

[42]   *Comsat Corp.*, 900 F. Supp. at 519-20 (citing *Edmond v. U.S. Postal Serv. Gen'l Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991)).

[43]   D.C. Code Ann. § 13-423(a) (2001).

[44]   D.C. Code Ann. § 13-423(b) (2001).

[45]   *Mouzavires v. Baxter*, 434 A.2d 988, 990-91 (D.C. 1981).

the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[46] Such contacts should be "neither irregular nor casual," but must demonstrate that the defendant purposefully availed himself of "the benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights."[47] The act or activities must also give rise to the obligation sued upon.[48]

The burden is on the plaintiff to articulate specific acts or contacts of the defendant that prove jurisdiction can be exercised.[49] Plaintiff's allegations need not be accepted as true.[50] When ruling on a motion to dismiss under Rule 12(b)(2) the Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts."[51]

**B.    Personal jurisdiction does not exist over Defendants.**

The allegations regarding Defendants' filing activities with the U.S. PTO provide the sole basis for Plaintiffs' argument that jurisdiction exists in the District of Columbia. Touchcom contends that general jurisdiction exists because of Defendants' professional activities in the District of Columbia, including their alleged regular communications

---

[46]    *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339 (1940)).

[47]    *Id.* at 319-20; *see also Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228 (1958).

[48]    *Int'l Shoe*, 326 U.S. at 320.

[49]    *Baltierra v. West Virginia Board of Medicine*, 253 F. Supp. 2d 9, 13 (D.D.C. 2003) (citing *Reuber v. United States*, 787 F.2d 599 (D.C. Cir. 1986)).

[50]    *Ulico Casualty Co. v. Fleet Nat'l Bank*, 257 F. Supp. 2d 142, 144 (D.D.C. 2003) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) and *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000)).

[51]    *Ulico Casualty Co.*, 257 F. Supp. 2d at 144.

with persons in the District of Columbia.[52] According to Touchcom, thirty-seven attorneys and patent agents employed by B&P are licensed to practice before the U.S. PTO, and have regularly conducted business in the District of Columbia.[53]

With regard to specific jurisdiction, Plaintiffs assert that B&P and Frost filed the patent application that resulted in the issuance of the '282 patent with the U.S. PTO in the District of Columbia. Touchcom also alleges that Defendants corresponded with the U.S. PTO in the District of Columbia on matters related to the patent application between August 5, 1988, the day the application was filed, and June 25, 1991, the date on which the '282 patent issued.

Touchcom's jurisdictional allegations are inaccurate because the U.S. PTO was not located in the District of Columbia between 1988 and 1991, the relevant time period.[54] Additionally, to the extent Plaintiffs seek to premise jurisdiction on some other argument, this too must fail. Plaintiffs cannot meet their burden of establishing personal jurisdiction under any other theory, because Defendants have not had sufficient contacts with the District of Columbia to support a finding of either general or specific personal jurisdiction.

### 1. Plaintiffs have not met their burden of establishing general personal jurisdiction over Frost and B&P, because neither Defendant has adequate connections to the District of Columbia.

Plaintiffs allege that Frost and B&P maintain "continuous and systematic professional activities in the District of Columbia," as well as "regular oral, electronic

---

[52] Complaint at ¶ 6.

[53] Id.

[54] U.S. Patent and Trademark Office, 1086 Official Gazette 1 (January 5, 1988); U.S. Patent and Trademark Office, 1098 Official Gazette 1 (January 3, 1989); U. S. Patent and Trademark Office, 1110 Official Gazette 1 (January 2, 1990); U. S. Patent and Trademark Office, 1122 Official Gazette 1 (January 1, 1991).

and written communications with persons in the District of Columbia in furtherance of their professional activities."[55] However, the only specific factual allegation in support of this conclusory statement is that "[t]hirty-seven attorneys and patent agents employed by B&P are licensed to practice before the U.S. PTO, and have regularly conducted their professional activities in the District of Columbia."[56]

Pursuant to the D.C. Code, the Court may exercise general jurisdiction over a person "domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia."[57] Neither Frost nor B&P is domiciled in, organized under the laws of, or maintains a principal place of business in the District of Columbia.[58] Thus, the D.C. general personal jurisdiction statute is facially inapplicable.

Moreover, Plaintiffs have not established that Frost and B&P have continuous and systematic contacts with the District of Columbia. The mere recitation of this conclusory language is not enough, as such statements "do not constitute the prima facie showing necessary to carry the burden of establishing personal jurisdiction."[59] To successfully carry its burden, the plaintiff must allege "specific facts that demonstrate purposeful activity by the defendant in the District of Columbia invoking the benefits and protections of its laws."[60] The only specific fact that Plaintiffs allege in support of their general jurisdiction argument relates to the practice of B&P employees before the

---

[55] Complaint at ¶ 6.

[56] *Id.*

[57] D.C. Code Ann. § 13-422 (2001).

[58] Frost Aff. ¶ 16; Hart Aff. ¶ 3, 4.

[59] *First Chi. Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).

[60] *Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 226 (D.D.C. 2005).

PTO. This allegation is inapposite, however, as the PTO is, and was during all relevant times, located in Virginia rather than the District of Columbia.[61]

Indeed, neither Frost nor B&P maintains any regular contact with the District of Columbia. Frost has never been domiciled in the District of Columbia, and has never entered into any kind of business transaction there.[62] He has never been licensed to practice in the District of Columbia.[63] Finally, Mr. Frost does not own any real property in the District of Columbia.[64]

B&P's contacts with the District of Columbia are similarly lacking. Although a number of Canadian lawyers are affiliated with B&P, these lawyers are not authorized to practice law in the United States.[65] Rather, B&P lawyers and patent agents are only authorized to practice as patent agents before the U.S. PTO in Virginia on behalf of Canadian residents.[66] Although B&P has lawyers and patent agents who are licensed to practice as patent agents before the U.S. PTO in Virginia, no lawyer or patent agent affiliated with B&P is or ever has been licensed to practice in the District of Columbia.[67] Except with respect to representing U.S. clients in Canada in connection with Canadian

---

[61] U.S. Patent and Trademark Office, 1086 Official Gazette 1 (January 5, 1988); U.S. Patent and Trademark Office, 1098 Official Gazette 1 (January 3, 1989); U. S. Patent and Trademark Office, 1110 Official Gazette 1 (January 2, 1990); U. S. Patent and Trademark Office, 1122 Official Gazette 1 (January 1, 1991).

[62] Frost Aff. ¶ 16, 17.

[63] Hart Aff. ¶ 5.

[64] Frost Aff. ¶ 19.

[65] Hart Aff. ¶ 5.

[66] *Id.*

[67] *Id.*

intellectual property issues, B&P does not solicit business from D.C. residents.[68] B&P does not own any real property in the District of Columbia.[69]

Any contacts between Frost and B&P and the District of Columbia are isolated and wholly insufficient to establish general personal jurisdiction there.

**2.     Plaintiffs have not met their burden of establishing specific jurisdiction over Frost and B&P, because neither Defendant has adequate connections to the District of Columbia.**

Plaintiffs also argue that specific jurisdiction exists as to Frost and B&P under the D.C. long-arm statute, "because they transacted business in the District of Columbia."[70] However, again, the only specific factual allegation Plaintiffs raise in support of this claim is that "[b]etween the filing of the patent application in the District of Columbia and issuance of the patent on June 25, 1991, B&P and Frost corresponded with the Patent & Trademark Office at its District of Columbia address on matters related to the patent application, and on each occasion acted negligently in failing to correct its omission."[71]

For specific personal jurisdiction to exist, the federal court must first determine if the applicable section of D.C. Code Section 13-423 authorizes the exercise of jurisdiction.[72] Section 13-423 permits a District of Columbia court to exercise specific personal jurisdiction over a person, "as to a claim for relief arising from the person's (1)

---

[68]     *Id.* ¶ 8.

[69]     Hart Aff. ¶ 10.

[70]     Complaint at ¶ 7.

[71]     *Id.*

[72]     *Comsat Corp.*, 900 F. Supp. at 519-20 (citing *Edmond v. U.S. Postal Serv. Gen'l Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991)).

transacting any business in the District of Columbia …".[73] When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted.[74] Thus, in order for this Court to have personal jurisdiction over B&P and Frost, the alleged transaction of business giving rise to Plaintiffs' claims must have occurred in the District of Columbia.[75]

In the instant case, no acts giving rise to Plaintiffs' claims occurred in the District of Columbia. The alleged act of negligence by B&P and Frost is their alleged "negligent omission of certain computer source code which B&P and Frost should have included in the application."[76] However, Plaintiffs and Defendants were present in Canada during the entire period when B&P and Frost provided services to Touchcom.[77] All services rendered by Defendants to Touchcom, including the drafting of the patent application – occurred in Canada.[78]

Notably, the omission of source code from the U.S. application actually occurred when the PCT Application was filed in the British Patent Office, rather than the U.S. PTO. As explained in Mr. Frost's affidavit, because the PCT filing date is deemed to be equivalent to a national filing date in the designated states, the U.S. application was

---

[73]   D.C. Code § 13-423(a) (2001).

[74]   D.C. Code Ann. § 13-423(b) (2001).

[75]   *Dooley v. United Tech. Corp.*, 786 F. Supp. 65, 71 (D.D.C. 1992); *see also COMSAT Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 521 (D.D.C. 1995) (stating that part of what a plaintiff needs to show is that "the claim arose from the business transacted in the District (so-called specific jurisdiction)").

[76]   Complaint ¶ 7.

[77]   Frost Aff. ¶ 6, 10.

[78]   *Id.*

required to be identical to the PCT application filed in the British Patent Office.[79] Therefore, B&P and Frost had no opportunity or ability to change the Touchcom application before it was filed in the U.S. Any error with regard to the source code happened when the PCT application was prepared and filed in the British Patent Office, and this transaction had no connection at all to the District of Columbia.

In fact, B&P and Frost did not transmit the U.S. application to the U.S. PTO. Rather, in accordance with PCT requirements, the actual text of the patent application was transmitted to the U.S. PTO by the International Bureau of WIPO (World Intellectual Property Organization), the organization which administers the PCT system.[80] And, as required, the application as filed in the United States tracked identically the application which had been filed in the British Patent Office.[81]

The only documents that were actually filed by B&P and Frost in connection with the U.S. application were those necessary to perfect the national phase entry application in the U.S. PTO.[82] Although some of these documents bore an address to the "Commissioner of Patents and Trademarks" in Washington, D.C., this was a nominal address to which documents were not delivered.[83] Rather, B&P used a filing service to hand deliver these documents to the appropriate office within the U.S. PTO in Arlington,

---

[79]   *Id.* ¶ 13.

[80]   *Id.*

[81]   *Id.*

[82]   *Id.* ¶ 14.

[83]   *Id.*

Virginia.[84]  Plaintiffs' allegation that jurisdiction is proper because the U.S. PTO was located in the District of Columbia is simply wrong.

Plaintiffs have failed to allege any specific contact by Defendants to the District of Columbia, and as such have wholly failed to establish specific personal jurisdiction.

### 3. An exercise of jurisdiction by this Court over Frost and B&P would not comport with principles of Due Process.

Finally, any exercise of jurisdiction over Defendants in the District of Columbia would violate principles of Due Process.  The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations,'" and "requir[es] that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'"[85]  Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this fair warning requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, "and the litigation results from alleged injuries that 'arise out of or relate to' those activities."[86]

In this case, Defendants would have had no fair warning that the services they rendered in Canada to a Canadian client and their delivery of documents to the U.S. PTO in Virginia would subject them to the jurisdiction of the District of Columbia. Neither Frost nor B&P have purposefully directed any activities at residents of the

---

[84]   *Id.*

[85]   *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154 (1945); *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569 (1977)).

[86]   *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868 (1984)).

District of Columbia. Indeed, Plaintiffs have failed even to allege such conduct. Moreover, as explained above, Plaintiffs' claims do not arise out of any activities directed at the District of Columbia. As such, any exercise of jurisdiction over Defendants here would stand in direct contravention of the Due Process protections of the U.S. Constitution.

### III.
### CONCLUSION

Plaintiffs have failed to meet their burden of establishing either general or specific personal jurisdiction over Frost and B&P in the District of Columbia. All of the actions relevant to Plaintiffs' claims occurred in Canada, and to the extent Plaintiffs seek to base their jurisdictional allegations on Defendants' contact with the U.S. PTO, this contact was with the state of Virginia. There is no basis for jurisdiction under the language of the D.C. long-arm statute, and an exercise of jurisdiction would violate principles of Due Process. Therefore, Defendants respectfully request that this Court grant their Motion to Dismiss for Lack of Personal Jurisdiction and dismiss Plaintiffs' complaint with prejudice.

Dated: September 26th, 2006

                                       Respectfully submitted,

                                       */s/*

                                       Peter E. Strand
                                       Carlos E. Provencio

                                       SHOOK, HARDY & BACON L.L.P.
                                       D.C. Bar No. 481870
                                       600 14th Street N.W., Suite 800
                                       Washington, D.C. 20005-2004
                                       202-783-8400 – Telephone
                                       202-783-4211 – Facsimile

                                       ATTORNEYS FOR DEFENDANTS
                                       BERESKIN & PARR AND H. SAMUEL FROST

**CERTIFICATE OF SERVICE**

On this 26th day of September, 2006, I served a true and correct copy of this document by regular mail on all counsel of record.

_____
Carlos Provencio